Good morning, Your Honors. I am Jeremy Friedman, and it's my honor and pleasure to appear before you today to address some important issues regarding the QTAM provisions of the False Claims Act. I represent the QTAM plaintiffs, Dr. Patricia Haight, the relator, who is from Phoenix, Arizona, and the organization In Defense of Animals, which is a Marin-based nationwide organization. Dr. Elliot Katz is the president, and he's present in the courtroom today. This appeal raises two important areas under the 1986 amendments to the jurisdictional bar of the False Claims Act. The first is whether there were public disclosures of the allegations or transactions in the specified forums that are set forth in the statute, and the second is whether or not Dr. Haight qualifies as an original source of the information upon which the allegations are based. To help the Court answer this question, I think it's important to look at the intent behind the 1986 amendments to the False Claims Act, particularly those that deal with the jurisdictional bar. What was the evil that Congress intended to stop by passing these particular provisions? We know that jurisdiction does not turn on the merits of a case. It could be a meritorious case, but the action still may fail if the jurisdictional provisions are not there. Thus, a defendant can, who has actually breached the statute, could escape liability if the jurisdictional provision applies. So the jurisdictional provision focuses on the relator and on whether or not the relator has taken advantage of the government's own investigation and didn't contribute anything to that investigation. There were two very important changes in the jurisdictional provision from the pre-'86 law to the post-'86 law. Prior to 1986, as this Court has talked about many times, the jurisdictional bar was based upon government knowledge. If the government had possession of the information necessary to formulate the allegations or to prosecute, then that was sufficient to bar a key TAM case. But there were problems with that, two particular problems. One is the government would often have information, but not bring an action for various reasons, political will, lack of resources. There could be information in the possession of the government, but the important provisions of the False Claims Act would not go forward. The second problem is that often the government had knowledge as a result of the relator's own activity. If the relator was the one that disclosed the information to the government, then the government had the information and the case was barred. The 1986 amendments changed both of those provisions. Now the addition of the original source provision deals directly with the problem that was raised in Dean. As this Court knows, the Wisconsin case in Dean involved the state of Wisconsin who had informed the government of the allegations of the fraud. And the Seventh Circuit there determined that because the government was informed, the federal government was informed by the state, the state could not be a relator. And in the Ninth Circuit in Pettit, this case reached a similar conclusion. But if Congress intended only to rectify the situation in Dean, they could have kept the government knowledge bar and just added the original source. It could have simply said that the case is barred if the government has the knowledge, but we're going to create an exception for the original source, such as the state of Wisconsin and Dean. But Congress chose not to do that. It not only added the original source exception, but it changed the government knowledge bar to a public disclosure bar. And therefore, it's clear that Congress wanted key TAM actions to go forward even when the government had knowledge and even when the relator did not provide any valuable information, as long as that information was not in the public, disclosed in a public document such as an investigation, an audit, a hearing, or a report. So what was the evil that Congress was trying to get to when it passed the provision that dealt with public disclosure and changed it from government knowledge? We think, and we argue in the briefs, that it's very clear that what they're trying to get to are the when a relator simply relies upon the investigation of the government and uses that investigation to formulate that relator's own case. It's taking advantage of the government's claim and taking advantage and writing the coattails of the government's investigation. Now when we talk about writing the government coattails, the investigatory coattails, it's clear in this case that there was no public disclosure in the news articles in this case. As the Court stated in Horizon West, the public disclosure alone must contain both the alleged misrepresentation of facts and the true statement of facts. Here — It would be helpful with that exegesis if we could get to some of the specific issues. First of all, you jumped to the media disclosures, but what about the FOIA request? Okay, Your Honor. The FOIA requests are a very important issue for this Court to decide. This Court has not yet addressed whether or not a FOIA request is sufficient to trigger the bar. Now the reason why I started with the media was because it was clear the media didn't contain the allegations about fraud. So the only way you can get there is by looking to the fact that the relator in this case requested documents through FOIA, and in that request, the document was produced, but it wasn't a government investigation. It wasn't a report. It wasn't an audit. It wasn't a hearing. It was a copy of the grant application that the defendants had filed. Was there also other information that was given in the FOIA request? Were there letters or some other material as well? Yes, Your Honor. Is that in the record? I've been having trouble finding it. They're not in the record because they're not relevant to this particular dispute. The information that the defendants moved on that said there was public disclosure, the only information relevant was the grant application. The other information was a summary of the abstract and also some additional information regarding funding, but it didn't disclose any of the vital information that the defendants claimed triggered the bar, and that is the representations that the defendants made to the government to get the federal funding. So that's why the only issues that are in the record are the grant application, which we produced in full. Now, does it serve the intent of Congress in enacting this jurisdictional bar to say that the bar is raised every time a prospective relator, a prospective key TAM plaintiff, makes a request for documents through FOIA? Is that consistent with the Congress's intent? And we think not. Chief Judge Becker's decision, his dissenting opinion in MISTIC, goes through much better rationale than I could restate here, but the high points are that a FOIA request does not make a public disclosure. That document is provided only to the person who makes that request, and he's under or she's under no obligation to distribute that to anywhere else. Nobody else is required to get that or has access to that. But more importantly — Do you have any either more general law about what's a public disclosure or any legislative history or any clue as to what Congress meant by that? Did it mean — I mean, public can mean, you know, outside the government, or it can mean to the world at large, or it can mean to anybody who asks for it. So what does it mean? Well, Your Honor, the best place to start with that is the language itself. It didn't say a disclosure. The word public was put in there for a particular reason. If it was just a disclosure, a FOIA request would be a disclosure to a person, and that would trigger the bar. But in this case, the statute specifically says — It's a disclosure to somebody qua member of the public, in the sense that it is in no specialized capacity that this person is getting it, simply as a member of the public. I don't think it says a member of the public either. I think when they talk about public disclosures, they're talking about documents that are disseminated to the public. Now, it's clear that there are many documents out there that the government does publish. When they do reports, when they do investigations, when they do audits, they have the option of sending it to the government, you know, publishing office, and these documents get published. And people can go online, and they can find these documents, or they can read them as they come out of the agencies. On the other hand, there are often many audits or reports that are being made, none in this case. But there are, that the government makes, that they don't make public. That doesn't mean that they can't be disclosed to various individuals, including somebody who makes a request for those documents. But that is not a public disclosure. That is not a dissemination. And I think the reason — What is the underlying purpose of the public disclosure notion? It's that if it's out in the common knowledge, essentially, anybody could proceed on it, but it isn't anybody we're concerned about. It's the government. It's a little odd because the government, if the government has the information, they can proceed on it. If 75,000 other people have it, why is that relevant to what we're talking about, what we're asking here? That, I think, ties directly into what I started out my argument with, which is it has to do with the parasitic lawsuits. It has to do with the individual who doesn't use his own industry to get information, like filing a FOIA request or maybe even filing a suit in order to get that FOIA information. But, in fact, it has to do with that person who does nothing but read information that is generally disseminated to the public and, therefore, is a parasite, simply repeating things that are already available. I think it has to do with the fact that not somebody who can piece his things together from disparate areas, but the person who can just sit there and read a publicly disclosed document and come up with the allegations to take advantage of the government's case. I would like to point out the Court to one additional supplemental authority on this very point that I submitted to the Court today and to opposing counsel, and that's the district court decision in Northern District of Illinois, and a copy has been included, or a citation has been included to the Court, and it's the Yanacopoulos, U.S. X. Rel. Yanacopoulos v. General Dynamics. And there's a good analysis in that case about the circuit split. But on the FOIA issue, I'd like to make three points. One is as a practical matter, the government does not want or need to raise the bar when a key TAM plaintiff uses FOIA. In fact, to perform a meaningful investigation, including obtaining documents before you file a lawsuit, or before you file a lawsuit, you have to make a disclosure statement to the government. Now, if the bar is raised every time somebody makes a FOIA request, as a practical matter, lawyers and relators, the relators and the lawyers that represent those relators, are not going to be able to make FOIA requests. They're not going to be able to ask for the basic documents that help support the allegations that they wish to prove. So as a practical matter, what you're doing, if you say that the FOIA request alone triggers the bar, is it's going to tell all of those relators out there, formulate your allegations without even getting the basic documents. There will be less pre-filing investigations. There will be less discovery of fraud. And there will be an incomplete disclosure to the Department of Justice. And they will only have 60 days to make up their mind as to whether or not to intervene in the case and to take it over. Without the relator having access to FOIA documents, it hamstrings them and it makes the act less effective. Second, and maybe this goes to the Court's question about the legislative intent, it's clear that the 1986 amendments did not go to the question of a FOIA request. It says, it doesn't say disclosure of information. It says disclosure of, public disclosure of allegations or transactions. And it doesn't say disclosure to any person. It says the public disclosures. And in this regard, Your Honors, I'd like to ask the Court to consider the letter, the statement in the congressional record by Senator Grassley and Representative Berman, a copy of which I have included in the supplemental citations. Now, this was a statement that was cited and discussed in the Alina case from the Eighth Circuit. And as Judge Gibson noted, the letter itself, the statement doesn't stand as legislative history because it was done in 1999. But nonetheless, these are the authors of the act, and we ask that the Court consider their commentary as any other commentary would be interested or would be interesting to this point. And I'd like to read to the Court on this particular question. Finally, in this regard, we want to forcefully to disagree with the case holding that key TAM suits are barred if the relator obtains some or even all of the information necessary to prove fraud from publicly available documents such as those obtained from the Freedom of Information Act request. We believe that a relator who uses their education, training, experience, and talent to uncover a fraudulent scheme from publicly available documents should be allowed to file the key TAM action. If, absent the relator's ability to understand a fraudulent scheme, the fraud would go undetected, then we should reward the relators who with their talent and energy come forward with allegations and file the key TAM suit. This is especially true where a relator must piece together facts exposing the fraud from separate documents. Doesn't this discussion really go more to the original source issue, and are you going to address that? My understanding of what you just read us is that they're real discontentious with the narrowness of the original source cases, of which we have several. So the question is, given our case law, is there, I mean, plainly, if you had an original source doctrine that was broad enough to encompass your problem, you wouldn't have to back it up to the public disclosure point. So the question is, what is our original source doctrine and how does it work in this case? Your Honor, that's, I thought that as well when I was quoting this. But when you read the statement, it's not in the original source section. And in fact, Senator Grassley and Representative Berman do go on to talk about the original source. But the passage I just read deals not just, not with the original source issue, although I understand that the rationale that they use seems to sound like it's talking about the original source question. But it is in the section of their letter and it is consistent with the analysis provided on public disclosure. In other words, is there public disclosure when a relator goes out and requests documents that they need to prove their case? Should that trigger this bar? And the quote that I gave you, I believe, and I'd ask that the Court look at it, deals with the public disclosure and not the original source. But even more important, the issue here is in this case, the FOIA request did not produce an investigation, a report, an audit. No courts except the Mystic decision over Judge Becker's dissent says that a response to a FOIA request is a government investigation. And in this case, it's clear there was no government investigation, audit, report, or hearing. It's unlike the case in Lockheed or the case in Schumer where the documents that were being sought by FOIA were DCAA audits. It's clear that in this case, even with the production, even if the FOIA request does result in public disclosure, which we believe it doesn't, it still did not be, it's still not a disclosure in the specified area. I'd also like to turn to the original source question. And I believe Judge Martone struggled with this. He said there was no authority, or that I couldn't cite him authority, that a relator's own investigation could qualify as original source. And on this issue, I believe that there is a record. That's in the excerpts of record at page 127. And in this case, in this Court, in Devlin and in Fine, the Court held that a relator's own investigation could, in fact, lead to original source. And it doesn't mean that they have to have witness of the actual fraud. What they have to have is direct and independent knowledge of the information upon which the allegations are based. And as this — That's independent of what? Well, the independence, we believe, has to deal with public disclosures. Independent of the public disclosures. And what about direct? That's where the cases have gotten their difficulty. That's where the more difficult issue is. And this Court has fashioned, through its negative analysis of cases that didn't qualify, a very good understanding. And this case provides a way for the Court to decide to find the other side. In other words, cases where the information is not direct is when the relator relies upon allegations that were told by somebody else, when the relator makes it — But that's part of what happened here, isn't it? Oh, no, Your Honor. She interviewed people who told her stuff. That's basically what it is. Oh, told her — She had to be forward enough to do the interviews, but she interviewed people and that's how she got her information. And during those — Especially secondhand. Sorry. During those interviews, not one individual told her that there was fraud on the government. Not one individual told her that there was lies in the grant application. Not one individual told her this is an area that we should look into for fraud or for false claims. What she did was go to the raw material, the records, the people who kept the dogs and the people who — and the actual records of those dogs and made her own inquiries and her own investigation. Nobody made that investigation for her. Okay. Your time is up. We'll give you a minute or so in rebuttal. Thank you. Thank you very much. Good morning. May it please the court and counsel, Lawrence Kasten for the appellees. I think the court asked a fantastic question with respect to the FOIA requirement. What is this public disclosure issue all about? We know that the legislative history — we know what the legislative history of the public disclosure bar is. Essentially, it's a public disclosure issue. It had a circumstance in which a claim could be barred even though the government had the information only by virtue of the fact that it was given the information by the relator. So the statute was amended to make clear that in some circumstances, even where the relator gives the information to the government, where the government — the reason the government has the information is because of the relator, we're nevertheless going to allow the claim. We know, because the court has said a number of times, that the purpose of the amendments was to try to bar claims based on information that's knowable or known to the government. So what is this public disclosure bar all about? And I think the answer is that it's a gatekeeping function. And I direct the court to the CL-1 opinion. Sometimes it is — something is known. In this instance, there was something known, but some of it is not known. I mean, as the Horizon case says, there's X and there's Y, right? And here we have — the X was in the government's files, but the Y was not. And so how does that help the situation? Well, in the FOIA context — remember what's happening in the FOIA context. This is information — the relator is basing a claim on information that was not just known to the government, but was in the government's possession. The government gave the information to the relator. And only based on that information is the relator then able to bring a claim. But, counsel, what the relator got here was the grant application. On its face, it's just fine. And what the relator brought to the table was investigations independent by her that showed that what was in this application was false. So it seems to me that it's not a public disclosure, number one. And number two, it's not like an investigation. It's not a report. It's not anything that showed that the government knew that they had been hoodwinked. Two points. I think there maybe are two questions there. The first is, what do we make of the fact that in the FOIA disclosures, only the allegedly false state of affairs occurred? If you're just holding the grant application, as the Court noted, you don't know that anything in there is false. It's other material. The information from which she decided that there was an allegation here that fraud had occurred was also publicly disclosed. That is, the allegedly true state of facts was also in public disclosures. And I don't think the ---- And what's very peculiar about this case, and I guess it has to do with her prior case law about based upon, which I don't quite understand, is that if she hadn't gone to the newspapers and there hadn't been herself and there hadn't been a publication, then she would have had no problem. She could have gone forward with this case. Is that correct? On some of the claims, in answer to one of the Court's other questions to the appellants, there are other FOIA documents that are, in fact, in the record from which she derived the alleged true state of facts. They weren't in the excerpts. They are in the supplemental excerpts. These are pages 81 to 86. These are other letters that were obtained pursuant to FOIA on which a number of the allegations in the complaint relating to animal welfare and things like that can be found. Judge Fletcher, I think the other question that you asked was ---- Just to finish. So the answer to my question is yes. If she hadn't gone to the newspaper, she would have had a case. For some of the claims, absolutely. Is there any sense in that? What possible sense is there in that? In other words, what we're doing is we're privileging keeping things secret so you can go file a lawsuit and not tell anybody else about it. I mean, I think that is the rule, yes, Your Honor. I think it's the established law from this Court. The Biddle case held that directly. The relator who appeared on 2020 and then brought a claim and the defendant said, sorry, that's been publicly disclosed. You publicly disclosed it. And this Court said that's correct. The ---- But doesn't that, if that's going to be so, since the main reason for that rule is because otherwise you're making the original source provision pointless, point to a fairly broad interpretation of original source? Well, no. I don't necessarily think it would. I mean, the reason that the Biddle Court held the way it did was because it said we need to come up with an understanding of the public disclosure bar that doesn't render the original source provision so it has no work to do. Right. Clearly, the original source requirement, even under the Biddle understanding, still has work to do. Exactly. Absolutely. There are still some people that the original source ---- But it would certainly suggest that somebody like this who actually went and did an original source, who was a member of the government, which was the main thing that Biddle was concerned about, why shouldn't she be an original source? I know I'm changing gears on you, but why not? Say that again, Your Honor. I am changing gears on you, but why not? The answer to the previous question was I don't think it answers the question one way or the other whether it should be narrow or broad. There's very specific law in this circuit on what original source means. There are at least two requirements that we've brought to the Court's attention  here, the directness requirement, the independence requirement. I think the independence requirement is the easiest way to decide this case. Everybody agrees that in order for an original ---- for a relator to be an original source, it must have independent knowledge of the allegations or of the information on which its allegations or claims are based. Here, and what that means, and what the Court has said repeatedly that that means, is that the relator's knowledge has to precede the public disclosures. Here, this relator could not have brought any of these claims prior to the public disclosures. The entire ---- there can be no allegation of fraud until the grant application is publicly disclosed. Well, she had this information. She'd done her own independent investigation, and so she says to herself, based on that, the government shouldn't have granted that application because of all the stuff that showed that there was just no basis for what the doctor was doing. So then she says, I'm just going to verify that there must be something wrong in the grant application. So I ask for it, and that then puts my case together. Everything on ---- the investigation that she performs relies entirely on documents and information that were secondhand. There is absolutely none of it that she obtained firsthand. There are only ---- She says otherwise in her deposition. I don't know how that can possibly be, because she did not even know about the research or the grant application until after it had been complete, until she ---- But she knew that the government had made a grant. She did know that. Well, I'm not even sure that she knew that until she meets with some protesters outside of ASU two and a half years later, or two and a quarter years later. So I think the record is clear. She didn't even know that. I think it's clear. The ---- everything that she relied on. Remember, there are only ---- One of the things that Appellant's counsel says is that I want the court to draw negative inferences from the cases that have declined to find original source status. And I think the reason he says that is because there are only two published cases from this court in which the court has found somebody to be an original source. In one of those cases, you were talking about one of the people that perpetrated the fraud and then left his employer as a government subcontractor, left the subcontractor and then tried to sue the subcontractor. That's the Barajas case. And, in fact, this court didn't even say that person is an original source. It said he might be. We're going to remand and try and have the district court decide it. And then the second case is the Wang case in which you had an engineer that was called in to try to fix the problem in a military vehicle that was allegedly not disclosed to the government and then later brought a claim against the company that brought him in. So those are the only two cases in which original source status has been found. But what if you had somebody who was an epidemiologist and he did, as is often done, a complete statistical revamping of all the studies that have been done in some medical issue and came up with different conclusions that have  been made. How does that have anything to do with the purposes of the statute? This person has, in a scientific sense, found out something that wasn't true, that wasn't known before, with a great deal of effort. And let's say that in doing so has just proven something that the government has been told. I don't have my hypothetical quite together. Nonetheless, I mean, this is recognized in serious scientific research, even though it doesn't involve doing some experiments or having an empirical research. Where did the statuteist get the idea that you have to have hands-on empirical research in order to be an original source? I wouldn't say it has to be hands-on empirical research, but it has to be firsthand research. And the word I would rely on is the word direct. There are many, many cases. Oh, she firsthand, as I understood it, went through every, all the protocols that were used in this, in these experiments. That's certainly not true. No, Your Honor. She went through some documents. All right. She went through some of the protocols. But she went through some of the scientific documents, as somebody might do who was trying to discover the validity of the experiment. And that's, why is that not first, whether it's firsthand depends upon what reference point you're using. Firsthand relative to what? Firsthand relative to knowledge of the information. Right. She had knowledge of the information of what was reported. That she had firsthand knowledge of. What the documents showed. She wasn't getting that from somebody else. She read the documents herself. Yes. But, you know, in that sense, somebody would have, if I interviewed a third party, I would, under that definition of firsthand, then have firsthand knowledge of what that person told me. But we know clearly from at least three cases in this circuit that that's not really firsthand knowledge, that that's taking information that somebody else has. And I guess maybe what the court is asking is, is that different when we're talking about a document? I don't see possibly how it could be. There are cases in this court which do involve documents. The, I believe it's the Afflatuni case, which is a case in which the relator relied both on documents and talking to people. And the court held neither of those as firsthand. Both of those are secondhand and direct. There are two cases from other courts that I think are particularly apt. The Barth case from the Eighth Circuit and the Grinberg case, a very recent case from the Tenth Circuit. The Grinberg case we provided in the supplemental authority letter. In the Barth case, Eighth Circuit case, 444, Fed Third, 699, the relator was alleging government contractor fraud and engaged in Judge Fletcher a very similar kind of what you termed as an investigation here. Self-described investigation. Visited the job site where the alleged fraud had occurred. Reviewed allegedly fraudulent payroll records. Interviewed a number of employees. And the court said all of this information is not direct. None of, it's all secondhand. None of it's direct. This is not an original source. The Grinberg case, even more similar. Very complicated facts. Had to do with carbon dioxide royalties and whether the charges, the correct charges were being passed on to the government for those royalties. The relator looked at FOIA documents, conversations with people at the job site, third parties, employees of the defendant. Then went to the library and did a bunch of research and tried to come up with his own model about what carbon dioxide really should cost. I guess this is the epidemiology hypothetical right here, the Grinberg case. Tried to come up with a model of what carbon dioxide true royalties are worth. And the court said no, all of that, none of that is, this is a statute about providing insider whistleblowers with an access to Federal courts. Not people who can take secondhand information and cobble together a claim of fraud from it. And both of these cases I think are exactly consistent with the, with the Devlin case, the Alcan case and the Appletuni case from this court. I'd also note that what we've been talking about here and I think the investigation questions, the hypothetical questions, these are about the directness requirement under the original source provision. There is a separate independent inquiry that the court must make. Apart from whether the information, the knowledge was direct. And that is whether the knowledge was gained independently. That is, did it precede, did the information on which the claims were based precede any public, the public disclosures on which the claims are based? I'm having, I think Judge Fletcher has a question. Do you? Are you saying then the fact that only insiders can be whistleblowers and bring FOIA requests, bring these key TAM suits? Only somebody with, with firsthand knowledge. And I think that's reflected both in the public disclosure requirement and. Would that qualify anybody outside the organization? It might. It depends. I mean, for example, in this case I imagine it's possible there are any number of people who could have had access to the, to the grant application without it having been publicly disclosed. You could have a research student in the lab. You could have somebody that was reviewing the document for the NIH. You could have somebody who was involved in the research, somebody who had access to the grant application. There are any number of possible plaintiffs. What we're talking about here is somebody that only had the document because the government gave it to her pursuant to a FOIA request. So is your position that not only do they have to be an original source, but they have to be an original source about everything? In other words, they have to have direct and independent knowledge of everything? Of the information. The statutory language is of the information on which the allegations are made. All of it. Certainly enough of the, if it is the case that you could not have brought a fraud claim without being the original source of a piece of information, then I would certainly think that relater is foreclosed. Oh, she didn't, wasn't directly involved with the grant application. It wouldn't do any good under those circumstances that she didn't get the information from the, from the government. If your definition of original source was correct, then she would not only have, even getting it from, if she worked at the location, which she did, I gather, at some point, and there was a file of grant applications and she got it from that file, that wouldn't be good enough either, unless she worked on the grant application. Well, remember, there's two different roads to being able to bring a False Claims Act claim. You don't even get to the original source issue. I understand. That's only stating. Part of it, if part of it, if she had not gotten that, if the other piece was still a public disclosure problem, that's what I'm asking you. In other words, if she still had a public disclosure problem because of the media problem, and with respect to the grant application, she got it from someplace else, but she didn't write it, that wouldn't help her. Well, that's right, actually. That's correct, Your Honor. That's absolutely right. The original source provision is a narrow savings clause in circumstances in which it's been found that there has been a public disclosure. Let me try to go back, just take sort of one step back and talk again about the Seal I case from this Court, 255 Fed Second, and the pages I'm talking about are 1158 to 1160. It's a case, and I'm sorry, I'm jumping back. Now I'm back to the FOIA issue. It's a case in which the relator was allowed access to documents by the U.S. attorney, and then tried to bring a false claim to that claim based on that information. And this Court spoke at length about the meaning and purposes of the 1986 amendments to the statute. The law in 1943, the Supreme Court held in 1943, that even if a person gave information to the government, the public disclosure bar, I'm sorry, FOIA did not allow the claim. That was the law for 43 years until 1986 when Congress amended the statute to cure that problem. And the Court in Seal I talked about this issue extensively. And what it said is if the allegations in the complaint do not benefit the government because the government already knew about them, then the public disclosure bar bars jurisdiction unless the party was an original source. And I think what the Court is saying in the Seal I case is that we're not going to get into the question about where the relator got the information if it's already been publicly disclosed. So as I tried to say at the beginning, the public disclosure requirement is really a gatekeeping requirement, a requirement to deal with this preference in the statute for whistleblowing insiders and against opportunistic outsiders. Unless the Court has other questions, that's all I have. Thank you. All right. Thank you. I'll give you about a minute. Authority for the proposition that you don't have to be an insider in order to qualify as an original source is from the Tenth Circuit Comstock decision, which has been supplementally cited by the defendants. And in the supplemental citation we give you today, we submit the Solicitor General's brief on that topic, where the Court found that you don't have to have, you don't have to be an insider. And so long as you're not learning the information from another government audit or government report, as long as you do your own investigation, as long as you're not merely translating or labeling allegations that are already known, then you can qualify as an original source. And the Solicitor General's brief agrees with that and says the law is consistent throughout the land. With respect to AFL-TUNI, the facts are completely different. The relator did not know any of the facts, couldn't remember any of the essential information. The relator made no contribution whatsoever, and all that the relator could claim was mere negligence. The C01 case is completely different. In that case, Mr. Gale learned the allegations from the Department of Justice's own investigation, and that was the only information that that relator had. Thank you very much. Thank you. The case of Patricia Height v. Catholic Health Care West will be submitted.
judges: B .Fletcher, Gibson , Berzon